IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| POWER GUARDIAN, LLC, | ) |
| Plaintiff, | ) |
| v. | ) CIVIL ACTION NO. 5:12-CV-236 (MTT) |
| DIRECTIONAL ENERGY CORP. and FTC ENERGY, INC., | ) |
| Defendants. | ) |

### ORDER

Before the Court are the Plaintiff's motions for sanctions (Doc. 58), to pierce the Defendants' corporate veils (Doc. 59), and Defendant FTC Energy, Inc.'s motion (Doc. 55) for the Court to enter default judgment against it. For the reasons discussed below, the Plaintiff's motion for sanctions is **GRANTED in part** and **DENIED in part**, the motion to pierce the Defendants' corporate veils is **DENIED**, and FTC Energy's motion for default judgment is **DENIED as moot**.

### I.   BACKGROUND

#### A.   Plaintiff's Allegations

This is a lawsuit alleging breach of contract and other related claims involving the purchase and sale of generators. The Plaintiff is a Georgia company that purchased two generators from Directional Energy Corp. that were manufactured by FTC Energy, Inc. (Doc. 1-1, ¶ 1). Directional Energy is a Nevada corporation with its principal place

of business in California.  (Doc. 3-3, ¶ 2).  FTC Energy is a Florida corporation.  (Doc. 19-2, ¶ 4).

In April 2011, the Plaintiff inquired by email about purchasing two 25 KW generators from Directional Energy that it had viewed on Directional Energy's website.  (Doc. 1-1, ¶ 7).  The Plaintiff planned to incorporate the generators into a mobile biomass plant it hoped to market.  (Doc. 1-1, ¶ 12).  In response, Directional Energy representative Allen Staff[1] suggested the parties meet at FTC Energy's location in Florida to discuss the sale and delivery of the generators.  (Doc. 1-1, ¶ 8).  The Plaintiff agreed, and met Allen Staff in Florida along with FTC Energy CEO Joe Shepard.  (Doc. 1-1, ¶ 8).  There, during negotiations, the Defendants offered to upgrade the generators the Plaintiff intended to purchase from 25 KW to 35 KW and to replace the plastic casing with metal casing at no additional charge if the Plaintiff would allow more time for delivery.  (Doc. 1-1, ¶ 11).

On May 10, 2011, the Plaintiff by email asked to become a reseller of Directional Energy Corp.'s products.  (Doc. 12-1, ¶ 4).  The next day, Directional Energy emailed a Reseller's Agreement to the Plaintiff.  (Doc. 1-1, ¶ 13).  The email also included an invoice for two 35 KW FTC Focused Energy Cog Free generators priced at $41,000.00 each plus a five-year warranty from FTC Energy and a "guarantee of power."  (Doc. 1-1, ¶¶ 14, 64).  On May 13, at Allen Staff's instruction, the Plaintiff sent an $82,000.00 check overnight by FedEx to Staff's California residence.  (Doc. 1-1, ¶¶ 15-16).  Directional Energy endorsed and cashed the check on May 17.  (Doc. 1-1, ¶ 17).  Upon

---

[1] The Plaintiff alleges Allen Staff was listed as the President of Directional Energy.  In their Declarations, Conrad Staff calls himself the President, while Allen Staff refers to himself as a director of the company.  (Docs. 3-2, 3-3).

receiving payment, Directional Energy told the Plaintiff it should now deal directly with FTC Energy.  (Doc. 1-1, ¶ 78).

By late July, one of the generators was ready, and the Plaintiff picked it up in Florida.  (Doc. 1-1, ¶ 20).  On August 15, having not turned the unit on, the Plaintiff returned the generator to FTC Energy for modifications, including changing the casing from plastic to metal.  (Doc. 1-1, ¶ 23).  When the Plaintiff retrieved the generator on September 12, the modification had not been made but the Plaintiff nevertheless took the generator back to Georgia to test its power.  (Doc. 1-1, ¶¶ 25-27).  The unit failed to produce sufficient power.  (Doc. 1-1 ¶ 30).  On September 16, FTC Energy CEO Joe Shepard traveled to Georgia to test the generator.  It blew up.  (Doc. 1-1, ¶ 32).  FTC Energy took the unit back to Florida.  (Doc. 1-1, ¶ 33).

On September 26, FTC Energy notified the Plaintiff the second generator was ready, and the Plaintiff journeyed to Florida to pick it up.  (Doc. 1-1, ¶¶ 35-36).  The Plaintiff discovered the second generator was merely the first generator pieced back together.  (Doc. 1-1, ¶ 37).  The Plaintiff notified Directional Energy, who advised the Plaintiff to remove the casing and verify it was the same generator.  (Doc. 1-1, ¶ 39).  The Plaintiff did so, and on September 27, contacted Directional Energy and requested a full refund.  (Doc. 1-1, ¶ 42).  Directional Energy responded that it still intended to produce two generators as promised.  (Doc. 1-1, ¶ 43).

The Plaintiff then engaged in a series of increasingly contentious emails with FTC Energy regarding the refund request, condition of the generators, and promised performance.  (Doc. 1-1, ¶¶ 44-55).  Based on these communications, the Plaintiff perceived FTC Energy to be speaking for both itself and on behalf of Directional Energy.

(Doc. 1-1, ¶ 54). On December 28, 2011, the Plaintiff emailed Directional Energy about the status of the new generators. Directional Energy did not respond. (Doc. 1-1, ¶ 56). Having never obtained a working generator – but remaining in possession of the generator that blew up – the Plaintiff sent letters to both Defendants on February 7, 2012, again seeking a refund. Only FTC Energy responded, but not in a manner the Plaintiff found favorable. (Doc. 1-1, ¶¶ 57-58, 70). The Plaintiff then filed this lawsuit alleging breach of contract, bad faith, fraud, and other claims against the Defendants.

### B. Deficient Discovery Process

After the Court denied the Defendants' motions to dismiss for lack of personal jurisdiction, the Court entered a Rules 16 and 26 Order on October 25, 2012, and the parties agreed to a Scheduling and Discovery Order entered on November 14. (Docs. 25; 30). The Plaintiff has since attempted to engage in discovery with both Defendants but has had little success.

Problems arose shortly after the Court allowed counsel for Directional Energy to withdraw in December 2012. (Docs. 33, 35). On January 9, 2013, the Plaintiff sent discovery requests to Directional Energy at its corporate address in Nevada and, on January 11, to Allen Staff in California. (Docs. 41 at 1; 41-2). Responses to the requests were due February 11, 2013. According to the Plaintiff, no response was made. On February 22, the Plaintiff sent a deficiency letter to Allen Staff by Fed Ex, with signature required. (Docs. 41 at 2; 41-3). A copy was also sent by certified mail to Directional Energy's corporate address, and was delivered February 26, 2013. (Doc. 41-5). The letter to Allen Staff was delivered February 27, 2013. (Doc. 41-4). Again, there was no response. (Doc. 41 at 2).

With respect to FTC Energy, the Plaintiff states it mailed discovery requests to the company's counsel on January 8, 2013, prior to his withdrawal. When no responses were received on the February 11 due date, the Plaintiff sent by certified mail to FTC Energy's counsel a letter regarding discovery deficiencies. The letter was delivered February 16. (Doc. 42-2). The Plaintiff received from FTC Energy responses to Interrogatories and Requests for Admissions on February 22. According to the Plaintiff, these responses were deficient, and that same day, it sent a second set of interrogatories to FTC Energy's counsel. This Court granted counsel for FTC Energy's motion to withdraw on February 25. (Doc. 40). On February 28, FTC Energy's former counsel notified the Plaintiff that the second set of interrogatories had been forwarded to his former client. (Doc. 42-3). The Plaintiff then sent a second discovery deficiency letter directly to Joe Shepard. The letter was delivered by certified mail March 11.[2] (Doc. 42-4). On March 15, FTC Energy sent an email to the Plaintiff indicating it had referred the matter to a new lawyer.[3] (Doc. 42-6). According to the Plaintiff, this lawyer contacted Plaintiff's counsel March 20 to state he was not representing FTC Energy.

Having received little to no discovery from either Defendant, the Plaintiff filed motions to compel discovery on March 14, March 25, and April 5, 2013. (Docs. 41, 42, 43). The Court granted the Plaintiff's motions on May 7, ordering the Defendants to provide discovery and ordering its principals, Allen Staff, Conrad Staff, Joe Shepard, and Janie Shepard, to appear in Georgia for depositions. (Doc. 44). On May 17, Joe Shepard filed a "Notice to the Court" indicating FTC Energy had dissolved April 3 and

---

[2] The letter was also emailed to FTC Energy on March 7, 2013. (Doc. 42-5).

[3] No other lawyer has entered an appearance in this case on behalf of FTC Energy.

that he would not be deposed.  (Docs. 51; 51-1).  As for Directional Energy, the order compelling discovery was returned to the Court by the U.S. Postal Service on May 28.  (Doc. 54).  On May 30, Joe Shepard filed a "Request of the District Court" asking that default judgment be entered against FTC Energy, as it had no legal representation "and does not legally exist."  (Doc. 55).

On June 3, 2013, the Court modified its May order compelling discovery, cancelling any depositions it had previously ordered and requiring instead that the Defendants within ten days "respond fully to each and every interrogatory and document request propounded by the Plaintiff."[4]  (Doc. 57).  The Order further notified the parties that if the Defendants failed to comply, the Plaintiff should move to strike the Defendants' Answers and request the Court to enter default judgment.  (Doc. 57).  On June 17, having received no discovery from the Defendants, the Plaintiff filed a motion for sanctions requesting a broad range of relief, including the rendering of default judgment.  (Doc. 58).  The Plaintiff also filed a "Motion to Pierce Corporate Veils of Both Defendants."  (Doc. 59).  On June 19, Joe Shepard filed a response to the Court's June 3 Order in which he indicated FTC Energy would not be responding to the Plaintiff's discovery requests.  (Doc. 60).  On July 16, the Court's June 3 Order and other filings mailed to Directional Energy were returned to the Court by the U.S. Postal Service.  (Docs. 62, 63).

---

[4] The Plaintiff is mistaken in its apparent belief that the Defendants remained bound to appear in Georgia for depositions as the Court initially instructed in its May 7 Order.  (Doc. 44).  The June 3 Order (Doc. 57), as explained in a letter to the Plaintiff's counsel (Doc. 56), changed the conditions of the Court's Order on the Plaintiff's motion to compel.  It had become clear by that point that future proceedings were unnecessary given the Defendants' intention to not respond to discovery requests.

## II. DISCUSSION

Pursuant to Fed. R. Civ. P. 37(b) and 37(c), the Court may sanction parties for failure to comply with Court orders and for failure to provide discovery. Specifically, the Court may strike disobedient parties' pleadings and render a default judgment against them. Fed. R. Civ. P. 37(b)(2)(A)(iii), 37(b)(2)(A)(vi). District courts are afforded substantial discretion in deciding whether and how to impose sanctions under Rule 37. *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1366 (11th Cir. 1997). To impose the severe sanction of a default judgment, the district court must make a finding of willful or bad faith failure to comply. *Malautea v. Suzuki Motor Co., Ltd.,* 987 F.2d 1536, 1542 (11th Cir.1993). The district court must also find that lesser sanctions are not sufficient. *Cohen v. Carnival Cruise Lines, Inc.,* 782 F.2d 923, 925 (11th Cir.1986). In addition to authority derived from the federal rules, the Court has an inherent power to impose sanctions for litigation misconduct. *Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.*, 561 F.3d 1298, 1306 (11th Cir. 2009) (citing *Chambers v. NASCO Inc.*, 501 U.S. 32, 43-44 (1991)). This inherent power derives from the Court's need to manage its own affairs for the orderly and expeditious disposition of cases. *Id.*

Here, the sanction of default judgment is appropriate because the Defendants have willfully acted in bad faith in their failure to provide discovery and their failure to comply with this Court's orders that they provide discovery. Since its legal counsel withdrew, Directional Energy has flat out ignored its discovery obligations under the federal rules, the Rules 16 and 26 Order (Doc. 26), the Scheduling and Discovery Order (Doc. 30), and this Court's Order (Doc. 57) that it respond fully to the Plaintiff's interrogatories and document requests or subject itself to default judgment. FTC

Energy has shown an even more flagrant disdain for its obligations. It too has failed to comply with the federal rules, the Rules 16 and 26 Order, the Scheduling and Discovery Order, and the Court's Order that it produce all requested discovery. Moreover, the CEO of FTC Energy, Joe Shepard, has explicitly stated that the corporation would not be responding to discovery requests despite this Court's Order, and he has asked that default judgment be entered against his company. (Docs. 55; 60). Given this behavior and the Defendants' refusal to participate in this litigation, there is no sanction less than default judgment that would be sufficient. Accordingly, default judgment should be rendered against the Defendants.

However, although defaulting defendants are deemed to have admitted the plaintiff's well-pleaded allegations of fact, default judgment should not be entered unless the plaintiff's claim is legally sufficient. *Nishimatsu Constr. Co., Ltd. v. Houston Nat. Bank,* 515 F.2d 1200, 1206 (5th Cir.1975).[5] The Plaintiff has alleged seven claims against both defendants: (1) breach of contract; (2) wrongful inducement; (3) failure to mitigate damages; (4) failure to deliver paid for products; (5) bad faith; (6) fraud; and (7) punitive damages. (Docs. 1-1 at 11-23; 6 at 3). It has alleged an eighth claim against FTC Energy specifically: fraud and collusion. (Doc. 6). As to liability on these claims, the Court finds the facts legally sufficient to support default judgment against the Defendants. As to damages, the Complaint sufficiently pleads facts in its breach of contract and fraud counts to support the recovery of $82,000.00 – the price the Plaintiff paid for the generators. For punitive damages based on the Plaintiff's recovery for fraud, the Court finds the Plaintiff is entitled to $10,000.00. The Plaintiff seeks

---

[5] The Eleventh Circuit has adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981).

additional damages based on lost opportunity costs, lost profits, its pursuit of a working generator, attorney's fees, and court costs. However, there is no evidence in the record to support the recovery or calculation of these unliquidated damages. Accordingly, relief in that regard will not be granted.

Finally, in addition to default judgment, the Plaintiff in its motion seeks various other sanctions against the Defendants, including piercing their corporate veils,[6] holding their officers in contempt of court, and imprisoning these officers until they actually pay the damages assessed against their companies. However, there are no grounds for this relief. Consequently, the Court exercises its discretion to not sanction the Defendants further.

### III.    CONCLUSION

The Plaintiff's motion for sanctions (Doc. 58) is **GRANTED in part** with respect to its request for default judgment. All other relief requested by the Plaintiff in its motion is **DENIED**. Because default judgment is granted against the Defendants, the motion for default judgment against FTC Energy (Doc. 55) filed by Joe Shepard is **DENIED as moot**. Finally, the Plaintiff's motion to pierce the Defendants' corporate veils (Doc. 59) is also **DENIED**.

The Clerk of the Court is **DIRECTED** to enter default judgment against the Defendants finding them liable, jointly and severally, for damages in the amount of $82,000.00 and punitive damages in the amount of $10,000.00. The clerk shall then close the case.

---

[6] The Plaintiff has also filed a separate motion to pierce the Defendants corporate veils. (Doc. 59). That motion is **DENIED**. The motion effectively seeks relief against the Defendants' principals. They are not parties to this lawsuit.

**SO ORDERED**, this 26th day of July, 2013.

                                            <u>S/ Marc T. Treadwell</u>
                                            MARC T. TREADWELL, JUDGE
                                            UNITED STATES DISTRICT COURT